IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PEDRO RANGEL FUENTEZ,

    Petitioner,

vs.                                  No. CIV 98-0653 BB/JHG

CAMILO ROMERO, Warden

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    This matter is before the Court on Petitioner's (Fuentez) Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Fuentez, currently in state custody, attacks the Judgment, Sentence and Commitment imposed in the case styled *State of New Mexico v. Pedro Rangel Fuentez*, and numbered CR 93-86, Fifth Judicial District, Lea County, State of New Mexico. Having considered the arguments of counsel, pleadings, record proper, relevant law, and being otherwise fully informed, the Court finds the Petition for a Writ of Habeas Corpus is without merit and recommends it be denied.

    On December 8, 1992, a criminal complaint was filed in magistrate court, alleging that on April 4, 1992, Fuentez sold an undercover police officer approximately one-quarter gram of cocaine for the sum of thirty dollars. Record Proper (RP) 7. On March 15, 1993, Fuentez was charged by criminal information with unlawfully distributing cocaine. RP 1.

    On November 29, 1993, a jury convicted Fuentez of Trafficking a Controlled Substance, cocaine, a second degree felony. On January 18, 1994, the state district judge sentenced Fuentez to a term of nine years of incarceration with four years suspended and followed by two years

parole. RP 78A. On June 6, 1994, Fuentez admitted to being an habitual offender, therefore, on June 14, 1994, the state district judge rescinded the Judgment and Sentence entered on January 18, 1994, and enhanced the original sentence by one year pursuant to the Habitual Offender Act, for a total of six years, followed by two years parole. Fuentez filed a notice of appeal on January 18, 1994. RP 75. On June 19, 1995, the New Mexico Court of Appeals affirmed the state district court. Answer, Ex. HH. Fuentez did not file for certiorari in the New Mexico Supreme Court.

On January 22, 1996, Fuentez filed a petition for writ of habeas corpus in state district court. Answer, Ex. Y. On December 3, 1996, the state district judge held an evidentiary hearing and denied the writ. Answer, Ex. EE. On December 13, 1996, Fuentez filed his Petition for Writ of Certiorari, which the New Mexico Supreme Court denied on January 9, 1997. Answer, Exs. FF and GG. Fuentez filed a second petition for state habeas corpus relief on April 29, 1998. Answer, Ex. HH. The state district court summarily dismissed the petition on the same day. Ex. II. The New Mexico Supreme Court denied Fuentez' second Petition for Writ of Certiorari on May 20, 1998. Answer, Ex. KK.

Fuentez raises the following issues in his petition:

I. Whether failure of counsel to pursue the identity of the state's confidential informant deprived Petitioner of effective assistance.

II. Whether failure of counsel to conduct an effective cross-examination deprived Petitioner of effective assistance.

III. Whether failure of counsel to object to several pieces of evidence and several portions of trial testimony deprived Petitioner of effective assistance.

>   IV.  Whether Petitioner's counsel failed in his duty to be loyal to Petitioner and to act as Petitioner's advocate.
>
>   V.  Whether the evidence was legally sufficient for conviction.

### I.  Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, the petitioner must show both that his attorney's representation was so deficient that it was not objectively reasonable and that his counsel's deficiencies prejudiced his trial.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "An ineffective assistance claim may be resolved on either performance or prejudice grounds alone."  *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000).  The court evaluates counsel's conduct from the perspective of counsel at the time, not with "the distorting effects of hindsight."  *Castro v. Ward*, 138 F.3d 810, 829 (10th Cir. 1998).  To make a showing that counsel's performance was constitutionally deficient, the petitioner must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance that might be considered sound trial strategy.  *Strickland*, 466 U.S. at 689.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

To support his claim that his counsel was ineffective, Fuentez claims his counsel failed to pursue the identity of the state's confidential informant, failed to conduct an effective cross-examination, failed to object to certain evidence and testimony, and failed in his duty to be loyal to Fuentez and to conduct himself as his advocate.

Respondent claims Fuentez failed to present the "substance of some of the separate issues" of his ineffective assistance of counsel claim to the New Mexico Supreme Court and therefore the Court should dismiss the Petition under *Rose v. Lundy*, 455 U.S. 509 (1982).

Generally, a federal court presented with a habeas petition containing both exhausted and unexhausted claims should dismiss the entire petition without prejudice. *Id.* at 510. However, the Antiterrorism and Effective Death Penalty Act of 1996 authorizes the denial of a petition on the merits despite failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2); *Hoxsie v. Kerby,* 108 F.3d 1239, 1242-43 (10th Cir.), *cert. denied*, 522 U.S. 844 (1997). "[I]t is appropriate to address the merits of a habeas petition notwithstanding the failure to exhaust available state remedies where, 'the interests of comity and federalism will be better served by addressing the merits forthwith.'" *Hoxsie*, 108 F.3d at 1242 (quoting *Granberry v. Greer*, 481 U.S. 129, 134 (1987)). In this case, the Court finds it appropriate to address Fuentez' claim of ineffective assistance of counsel on the merits.

**A.  Failure of Counsel to Pursue the Identity of the State's Confidential Informant**

Fuentez argues defense counsel was ineffective when he failed, prior to trial, to pursue disclosure of the confidential informant. According to Fuentez, defense counsel's failure to pursue disclosure of the informant's identity "render[ed] trial counsel's representation ineffective" and "create[d] inherent prejudice to [him]." Pet'r Mem. Br. at 6. Fuentez argues the confidential informant was the only individual who could have supported the theory of the defense, which was that the undercover officer had misidentified Fuentez as the individual from whom he had purchased the cocaine. Fuentez insists that "had trial counsel requested the informant's identity, it is highly likely the court would have required disclosure." *Id.*

Although under New Mexico law the State "has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer . . . conducting an investigation," Fuentez'

4

counsel could have made a motion for an in camera hearing. *See* NMSCRA 1986, 11-510(a) & (c)(2). New Mexico Rule of Evidence 11-510C(2) states in pertinent part:

> If it appears from the evidence in the case or from other showing by a party that an informer will be able to give testimony that is relevant and helpful to the defense of an accused, or is necessary to a fair determination of the issue of guilt or innocence in a criminal case . . . and the state invokes the privilege, the court shall give the state . . . an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.

NMSCRA 1986, 11-510(c)(2). Thus, under Rule 11-510(c)(2), defense counsel could have requested an in camera hearing to explore the information known to the informant about the identity of "Pete." Under Rule 510, disclosure of an eyewitness informant requires the trial court to conduct an in camera hearing and determine whether the possible eyewitness would be able to give testimony that is relevant and helpful to the defense of an accused, or is necessary to a fair determination of defendant's guilt or innocence.

In this case, had defense counsel claimed the confidential informant was present when the transaction occurred, and alleged that the informant could provide information helpful to his defense of misidentification, the trial court would have found that Fuentez had met the required showing under Rule 510(c)(2) to conduct an in camera hearing. However, the Court will not speculate as to whether the trial court would have found that the confidential informant had information relevant and helpful to Fuentez' defense so as to order disclosure of the confidential informant. *See e.g., State v. Ramirez*, 95 N.M. 202 (Ct. App. 1980)(trial court erred when it denied defendant's motion for disclosure of confidential informant because defendant was unable to show that the informant's testimony would be relevant and helpful to the defense or necessary for a fair determination of guilt or innocence when defendant claimed the informant was present when the transaction occurred and alleged informant could provide information helpful to the

5

defense of entrapment); *Devose v. Norris*, 53 F.3d 201 (8th Cir. 1995)(Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense.).  "This is not to say that the informant's mere physical presence at the scene of the alleged crime would be sufficient to hold him a participant and thus affect the nondisclosure privilege." *McLawhorn v. State of North Carolina*, 484 F.2d 1, 5 n. 12 (4th Cir. 1973).

Having reviewed the record, the Court finds Fuentez has not shown that there is a reasonable probability that, but for counsel's failure to pursue disclosure of the confidential informant, the result of the proceeding would have been different.  At trial, Agent Cabello testified as follows.  On April 4, 1992, Agent Cabello, working in an undercover capacity, and a confidential informant were driving in a van around the southern part of Hobbs.  They were looking for potential drug dealers.  As they drove around they came across two Hispanic males walking on Morris street.[1]   Agent Cabello stopped and asked the two Hispanic males if they knew where he could buy some marijuana.  Fuentez approached the van and asked Agent Cabello if he would share the marijuana with them if Fuentez got some for him.  Agent Cabello replied he would.  The two Hispanic males then got into the van and identified themselves as Pete and Ruben.  After failing to find marijuana at two residences, Fuentez told Agent Cabello he knew

---

[1] According to Fuentez, at trial, notes of Officer Culbertson were presented to Agent Cabello.  Agent Cabello then testified that, according to Culbertson's notes, Agent Cabello met with Culbertson and a confidential informant on April 4, 1992, and then Agent Cabello and the confidential informant "left to meet with  Pete Flores and Ruben Rios."  Fuentez fails to cite to the record as to when this occurred.  Pet'r Mem. Brief at 3.  The Court has reviewed the trial tapes and did not find where this occurred.

where he could get some cocaine. Agent Cabello agreed to buy cocaine instead, and Fuentez directed him to a mobile home. Agent Cabello gave Fuentez two twenty dollar bills. Fuentez went into the mobile home and came back with a baggie of a white powdery substance and a ten dollar bill and a five dollar bill. The baggie was hidden in the dollar bills. Fuentez asked Agent Cabello for compensation. Agent Cabello gave him five dollars and, at Fuentez' request, dropped Fuentez and Ruben at a local restaurant. That was the only buy Agent Cabello made that day. Trial Tape 3 at 41.06- 45.27; Trial Tape 4 at 0.13-38.55.

Agent Cabello then went to the Hobbs Police Department and met with Agent Culbertson to field test the cocaine. Agent Culbertson was the other case agent in the case and had died before the case went to trial. The white powdery substance tested positive for cocaine. Agent Cabello then described Fuentez to Agent Culbertson. Agent Culberston told Agent Cabello he thought Agent Cabello was describing Pete Flores. Therefore, Agent Cabello wrote Pete Flores on his report. A few days later, Agent Cabello went to the Hobbs Police Department and looked into their files and examined at least four photographs of individuals with the name Pete before he came to Fuentez' photograph. Agent Cabello recognized Fuentez' photograph as the individual who sold him the cocaine on April 4, 1992. Trial Tape 3 at 41.06- 45.27; Trial Tape 4 at 0.13-38.55.

On cross-exam Agent Cabello testified he had identified Fuentez on his memory alone. When questioned by defense counsel about Pete Flores, Agent Cabello stated he was positive it was not Pete Flores because that was an alias used by a Pete Baranda. Agent Cabello had personal knowledge of Pete Baranda and knew Mr. Baranda was anywhere between 60 to 65 years old. Agent Cabello also denied describing "Pete" to Agent Culbertson and claimed he just

7

told Agent Culbertson that the Hispanic male had just given him the name "Pete." Trial Tape 4 at 41.05-45.23; Trial Tape 5 at 0.10-10.42. On re-direct Agent Cabello stated he had spent at least one and a half hour with Fuentez, both in the van and outside the van and had identified him a few days later from a photograph in the Hobbs Police Department files. Agent Cabello claimed to be "100% positive that [Fuentez] sold the cocaine to him." Finally, Agent Cabello stated Fuentez had long hair in the photograph and at the time of the April 4, 1992 drug transaction. Trial Tape 5 at 11.00-15.46.

Mr. Fuentez testified that he had never met Agent Cabello and denied selling him the cocaine. When the prosecutor asked him if he had cut his hair short since April 4, 1992, Fuentez denied he had. Fuentez further claimed he "wore his hair short all the time." However, in the photograph of Fuentez that was admitted into evidence, Fuentez wore long hair. Trial Tape 5 at 26.37-29.18.

Fuentez cites *State v. Debarry*, 86 N.M. 742 (Ct.App. 1974) and *State v. Beck*, 97 N.M. 312 (Ct.App. 1982) in support of his position. In *Beck*, prior to trial, the defendant moved the court for an order requiring the state to disclose the identity of the informant. Defendant made a specific claim that the confidential informer was the arranger and participant in the alleged drug sales, and, apart from the defendant, was the only non-police witness to the sales. The trial court denied the motion on the basis of an inadequate showing. Because the informer was the arranger and participant in the drug sales and was the only non-police witness, making the informer's testimony necessary for a fair determination of guilt or innocence, the Supreme Court found defendant had met the required showing under Evidence Rule 510(c)(2). Therefore, the New Mexico Supreme Court held the trial court erred in failing to conduct an in camera hearing to

8

determine whether the informer would be able to give testimony as defendant claimed and remanded the case for such a hearing.

In *Debarry,* the informant introduced defendant to the undercover officer and set up the drug transaction. The Court of Appeals held that where defendant's case rested on misidentification by the officer who made purchases of heroin while accompanied by the informant who participated in the introduction, the informant was a direct participant as to the question of misidentification. Thus, disclosure of the informant's identity was required if the district judge determined the informant's testimony was relevant to the defense. The Court of Appeals conditionally affirmed the judgment and remanded the case to the trial court for an in camera hearing to determine the relevance of the informant's testimony.

Unlike the confidential informants in *Beck* and *Debarry,* there is no evidence in this case indicating the confidential informant arranged the introduction of "Pete Flores" to Agent Cabello or participated in any way with setting up the drug transaction. The confidential informant was merely present on April 4, 1992, the day of the alleged crime. Moreover, there is no evidence of misidentification in this case. Agent Cabello testified he identified Fuentez from memory after spending at least one and a half hour with Fuentez, both in the van and outside the van and had identified him a few days later from a photograph in the Hobbs Police Department files. At trial, Agent Cabello identified Fuentez as the individual who sold him the cocaine and testified he was "100% positive that [Fuentez] sold the cocaine to him." Finally, there is no evidence Agent Cabello relied on the confidential informant to identify Fuentez. Accordingly, given the fact that Agent Cabello positively identified Fuentez as the perpetrator of the offense, the Court cannot conclude that there is a reasonable probability that, but for counsel's failure to file a motion to

disclose the identity of the confidential informant, the result of the proceeding would have been different.

**B.  Failure to Conduct an Effective Cross-examination**

Fuentez contends his "counsel's representation was ineffective because he failed to conduct a proper and effective cross-examination of Abdon Cabello, the prosecution's principal witness." Pet'r Mem. Br. at 13.  Fuentez contends his counsel was ineffective for the following reasons: (1) counsel failed to cross-examine Officer Cabello concerning the confidential informant and why the State had not produced him for trial; and (2) failed to undermine the credibility of the informant or to attempt any verification of information relayed by the informant to Officer Cabello.  According to Fuentez, it was the confidential informant who told Agent Cabello it was Pete Flores he met on April 4, 1992.

The Court has reviewed the entire record, including the trial tapes, and disagrees with Fuentez' version of the facts.  It was Agent Culbertson who told Agent Cabello that he thought the individual who sold Agent Cabello the cocaine was Pete Flores.  The confidential informant did not introduce Agent Cabello to Fuentez.  In fact, the only mention of the confidential informant at trial was by Agent Cabello who on direct exam testified the confidential informant was in the van with him on April 4, 1992.  There is no evidence indicating the confidential informant had anything to do with introducing Agent Cabello to Fuentez or setting up the drug transaction.  Accordingly, trial counsel was not ineffective for failing to cross-exam Agent Cabello regarding the information the confidential informant relayed to him since from the evidence it appears the confidential informant gave no information to Agent Cabello.

## C. Failure to Object to Evidence and Trial Testimony

Fuentez contends his counsel's representation was ineffective because trial counsel "should have objected to the photograph that Abdon Cabello selected from the Hobbs Police Department files" and which the prosecutor introduced into evidence.  According to the record, Agent Cabello testified that, a few days after the April 4, 1992 incident, he examined at least four photographs from the Hobbs Police Department files and identified Fuentez from one of the photographs.  Trial Tape 4, 13.55-14.148.  Agent Cabello also testified there was other identification information on the photograph, Fuentez' name, date of birth and "related information."  Trial Tape 4, 14.49-14.59.  Agent Cabello testified he obtained the photograph on April 16, 1993 and kept it in the case file until he brought it to trial.  Trial Tape 4, 15.09-15.16.  Fuentez claims the photograph and Agent Cabello were unreliable.

In addition, in chambers, the trial judge looked at the photograph, laughed and commented, "I don't know how they're going to identify; that doesn't even look like him.  Trial Tape 1, 32.15-32.43.  The trial judge also stated, "I know why you want to use it."  The trial judge allowed the photograph into evidence after having all the identifying evidence cropped off.  *Id.*

It appears from the record that defense counsel wanted the photograph introduced precisely because the photograph did not look anything like Fuentez.  Defense counsel's decision to allow the photograph into evidence was a matter of tactics and strategy.  Fuentez has not overcome the strong presumption that defense counsel's conduct falls within the wide range of reasonable professional assistance that might be considered sound trial strategy.  The court

11

evaluates counsel's conduct from the perspective of counsel at the time, not with "the distorting effects of hindsight." *Castro v. Ward*, 138 F.3d 810, 829 (10th Cir. 1998).

Fuentez further contends his counsel's representation was ineffective because trial counsel failed to object to Agent Cabello's testimony that Fuentez had attempted to buy marijuana before finally buying the cocaine and failed to object to the introduction of the baggie of cocaine. Fuentez fails to argue on what grounds defense counsel could have objected to Agent Cabello's testimony and the baggie. The state properly laid the foundation for admission of the baggie through Jerry O'Donnell, the chemist, and Agent Cabello. Accordingly, defense counsel was not ineffective for failing to object to the baggie or the testimony of Agent Cabello regarding the attempted purchase of marijuana before the actual transaction of cocaine took place.

## D.  Failure in Duty to be Loyal to Petitioner and to be Petitioner's Advocate

Based on all of Fuentez' perceived failures of defense counsel, Fuentez contends defense counsel not only failed in his duty to be loyal to him but also contends defense counsel "acted deliberately to prejudice the defense." Pet'r Mem. Br. at 18. Fuentez claims defense counsel's failure to seek the identity of the confidential informant "was a failure of loyalty in that defense counsel sought for his own benefit and future favor in the district attorney's office not to pursue the identity of the confidential informant for fear of antagonizing opposing counsel." *Id.* As further proof that his defense counsel sought to subvert his defense, Fuentez points to defense counsel's failure to object to the admission of the photograph and his request to have the photograph cropped. *Id.*

The Court disagrees with Fuentez' characterization of defense counsel's performance. Defense counsel's decision not to file a motion for disclosure of the confidential informant, his

12

decision not to object to the admission of the photograph, and his request to have the photograph cropped may be attributed to trial strategy. The Court will not second guess matters of trial strategy simply because the chosen strategy was not successful. *See, e.g., Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir. 1983). Accordingly, the Court finds Fuentez has failed to show defense counsel's performance was so deficient as to have deprived him of a fair trial.

## II. Sufficiency of the Evidence

Following the State's case, Fuentez moved for a directed verdict. The Court denied the motion. Fuentez' conviction is supported by substantial evidence. The jury convicted Fuentez of Trafficking a Controlled Substance, Cocaine, a second degree felony, contrary to Section 30-31-20. To establish that Fuentez engaged in the trafficking prohibited by Section 30-31-20, the State was required to prove that Fuentez had the cocaine in his possession, was aware that it was cocaine, and intended to transfer it to another.[2] RP 60.

In reviewing the sufficiency of the evidence in a criminal case, the test "is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131 (1988). "A reviewing court must view the evidence in the light most

---

[2] The state district court gave the following jury instruction:
```
    For you to find the defendant guilty of trafficking a
    controlled substance by distribution, the State must
    prove to your satisfaction beyond a reasonable doubt
    each of the following elements of the crime:

    1.   The defendant transferred cocaine to another;
    2.   The defendant knew it was cocaine or believed it to be
         cocaine;
    3.   This happened in New Mexico on or about the 4th day of
         April, 1992.
```

13

favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* A reviewing court "does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.* The jury is free to reject defendant's version of the facts. *State v. Rojo*, 126 N.M. 438, 444 (1998).

A review of the record indicates Agent Cabello identified Fuentez as the individual who sold him the cocaine. Agent Cabello testified that on April 4, 1992, he spent one hour and a half with Fuentez, in and out of the van, and identified him from a photograph from the Hobbs Police Department. He also testified he was 100 % certain Fuentez sold him the cocaine. At trial, Agent Cabello established that Fuentez went into a residence, came out with a baggie containing a white powdery substance that later tested positive for cocaine and transferred it to him. Finally, Agent Cabello testified Fuentez was the one that asked Agent Cabello if he was interested in buying cocaine instead of marijuana. Therefore, the jury could conclude that Fuentez was aware that the white powdery substance was cocaine. Although Fuentez testified he never met Agent Cabello and denied selling the cocaine, the jury chose to believe Agent Cabello and convicted Fuentez of the charge. Based on the foregoing, the Court finds that the evidence was sufficient to allow the jury to find guilt beyond a reasonable doubt with respect to every essential element of the crime.

## III.  RECOMMENDED DISPOSITION

Fuentez' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 should be denied.

---

JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to **28 U.S.C. § 636 (b)(1)**, file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.